ALEXANDER B. CVITAN (SBN 81746)
E-mail: alc@rac-law.com
MARSHA M. HAMASAKI (SBN 102720)
E-mail: marshah@rac-law.com
PETER A. HUTCHINSON (SBN 225399)
E-mail: peterh@rac-law.com
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860; Facsimile: (213) 386-5583
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company, | CASE NO.: |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **1. MONETARY DAMAGES DUE TO EMPLOYEE BENEFIT PLANS PURSUANT TO AGREEMENTS** |
| AMERI-CORE CONCRETE SAWING, INC., a California corporation; DAVID JOHN DUMAS, an individual; BUSINESS ALLIANCE INSURANCE COMPANY, a California corporation; OLD REPUBLIC SURETY COMPANY, a Wisconsin corporation; ATHENA ENGINEERING, INC., a California corporation, AMERICAN CONTRACTORS INDEMNITY COMPANY, a California corporation, | **2. MONETARY DAMAGES FOR BREACH OF SETTLEMENT AGREEMENT** **3. MONETARY DAMAGES THROUGH ENFORCEMENT OF LICENSE BOND** **4. MONETARY DAMAGES THROUGH ENFORCEMENT OF PAYMENT BONDS** |
| Defendants. | **5. SPECIFIC PERFORMANCE OF OBLIGATION TO PRODUCE RECORDS FOR AUDIT** |
| | [29 U.S.C. §§ 185, 1132(a)(3), 1132(g) and 1145; 28 U.S.C. § 1367(a)] |

Plaintiff, Construction Laborers Trust Funds for Southern California

Administrative Company, a Delaware limited liability company, alleges:

**JURISDICTION AND VENUE**

1.     This action is brought by a fiduciary administrator on behalf of employee benefit plans against an employer, one of its officers, its license bond surety, two payment bond sureties, and one of the employer's general contractors.  It is brought to: (a) enforce of the terms of collective bargaining agreements and plan trust agreements to recover fringe benefit contributions and related damages due by the employer on behalf of its employees (Claim 1); (b) enforce the terms of a settlement agreement between the plans, the employer and the officer covering a portion of the amount due (Claim 2); (c) enforce a claim against the employer's license bond covering a portion of the amount due (Claim 3); (d) enforce claims against three payment bonds covering portions of the amount due (Claims 4, 5 and 6); and (e) compel the employer to produce records for audit to determine if additional amounts are due (Claim 7).  This Court has jurisdiction over Claims 1, 2 and 7 pursuant to sections 502(g)(2) and 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132(g)(2) and 1145; section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3); and section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185.  This Court has supplemental jurisdiction over Claims 3, 4, 5 and 6 (and Claim 2 to any extent jurisdiction does lie under the above-referenced statutes) pursuant to 28 U.S.C. § 1367(a).  Pursuant to ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2), venue is proper in this district for each of the following reasons: the plans are administered in this district; the employer's performance and breach took place in this district; and the employer resides or may be found in this district.

**PARTIES**

2.     Plaintiff ("CLTF") is an administrator of, agent for collection for, a

fiduciary to, and brings this action on behalf of the following employee benefit plans: Laborers Health and Welfare Trust Fund for Southern California; Construction Laborers Pension Trust for Southern California; Laborers Annuity Plan for Southern California; Laborers Vacation, Holiday and Sick Pay Trust Fund; Laborers Training and Re-Training Trust Fund for Southern California; Fund for Construction Industry Advancement; Center for Contract Compliance; Laborers Contract Administration Trust Fund for Southern California; Laborers' Trusts Administrative Trust Fund for Southern California; and Southern California Partnership for Jobs Trust Fund (collectively "Trust Funds").  The Trust Funds are express trusts created by written agreements; employee benefit plans within the meaning of ERISA section 3(3), 29 U.S.C. § 1002(3); and multi-employer plans within the meaning of ERISA section 3(37)(A), 29 U.S.C. § 1002(37)(A).  The Trust Funds exist pursuant to ERISA and LMRA section 302, 29 U.S.C. § 186. CLTF and the Trust Funds' principal places of business are in the County of Los Angeles, State of California.

3.      CLTF is informed and believes, and on that basis alleges, that defendant Ameri-Core Concrete Sawing, Inc. ("Employer") is a corporation organized and existing under the laws of the State of California; has a principal place of business in the City of Yucaipa, County of San Bernardino, State of California; and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

4.      CLTF is informed and believes, and on that basis alleges, that David John Dumas ("Principal") is an individual who resides in the County of San Bernardino, State of California and is the secretary, chief financial officer or other officer or managing agent of the Employer, and has been such an officer at all times since at least August 1, 2016.

5.      CLTF is informed and believes, and on that basis alleges, that defendant Business Alliance Insurance Company ("License Bond Surety") is a California corporation that is licensed and authorized to perform and transact a surety business in the State of California, which has a principal place of business in the city of South San Francisco, State of California, and which does, or at all relevant times did, conduct business in California as a surety.

6.      CLTF is informed and believes, and on that basis alleges, that defendant Old Republic Surety Company ("Old Republic Payment Bond Surety") is a Wisconsin corporation that is licensed and authorized to perform and transact a surety business in the State of California, which has a principal place of business in the city of Brookfield, State of Wisconsin, and a principal office in California in the city of Chino Hills, County of San Bernardino, State of California, and which does, or at all relevant times did, conduct business in California as a surety.

7.      CLTF is informed and believes, and on that basis alleges, that defendant American Contractors Indemnity Company ("American Contractors Payment Bond Surety") is a California corporation that is licensed and authorized to perform and transact a surety business in the State of California, which has a principal place of business in the city of Los Angeles, County of Los Angeles, State of California, and which does, or at all relevant times did, conduct business in California as a surety.

8.      CLTF is informed and believes, and on that basis alleges, that defendant Athena Engineering, Inc. ("General Contractor"): is a corporation organized and existing under the laws of the State of California; has a principal place of business in the City of San Dimas, County of Los Angeles, State of California; and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

## **AGREEMENTS**

9.     The Employer is, and at all relevant times was (including from at least since August 1, 2016 and all times during which the events giving rise to the liabilities alleged in this complaint occurred), bound to certain collective bargaining agreements of the Southern California District Council of Laborers and its affiliated local Unions (collectively "Laborers Union") known as the Construction Master Labor Agreements, including one known as the Southern California Master Labor Agreement.

10.     Pursuant to the Construction Master Labor Agreements, employers become – and the Employer became and is – bound to the terms and conditions of the various trust agreements that created each of the Trust Funds ("Trust Agreements").  When referenced collectively hereinafter, the Construction Master Labor Agreements and Trust Agreements are referred to as "the Agreements."

11.     Under the terms of the Agreements, employers, including the Employer, are required to submit monthly fringe benefit contributions ("Monthly Contributions") to the Trust Funds for all hours worked by (or paid for) their employees who perform work covered by the Agreements ("Covered Work").

12.     Under the terms of the Agreements, employers, including the Employer, are required to submit to the Trust Funds, with their Monthly Contributions, monthly reports, itemized by project, listing the names of their employees who performed Covered Work, their Social Security numbers, the hours of work performed by (or paid for) each, and the resulting Monthly Contributions due for them ("Monthly Reports").  The Trust Funds rely on Monthly Reports – and the accuracy of those reports – to determine the amount of Monthly Contributions due to the Trust Funds

by employers and the credit toward fringe benefits to be allocated to their employees.

13.     The Agreements provide for the payment of interest on delinquent Monthly Contributions from the date due at a rate set by the trustees of the Trust Funds.  The trustees have set that rate at five percent (5%) above the prime rate set by the Federal Reserve Board of San Francisco, California.  The Agreements also provide for the payment of liquidated damages for each month of delinquent Monthly Contributions or Monthly Reports, for each Trust Fund separately, in the amount of twenty percent (20%) of the delinquent Monthly Contributions due to the Trust Fund or $25, whichever is greater.  In addition, employers are required to pay fees for the submission of dishonored checks.

14.     The failure of employers to pay Monthly Contributions when due causes damages to the Trust Funds and its participants beyond the value of the unpaid Monthly Contributions, which are difficult to quantify.  Apart from the fees and costs incurred in litigation, the harm caused includes, but is not limited to, the administrative costs of processing and collecting delinquencies, the costs of adjusting benefit credits and notifying participants, the additional burden placed on contractors who faithfully pay their contributions, and the burden upon participants and beneficiaries who may be unable to qualify for benefits they may have otherwise been entitled to had it not been for the delinquency of their employer.  The liquidated damages provision of the Agreements was meant to compensate for the loss to the Trust Funds, which is incurred even if the Monthly Contributions for a given month are later paid.  It is based on the Trust Funds' ratio of collection costs over amounts collected, which are regularly reported to the Trust Funds' trustees.

15.     Under the terms of the Agreements, employers, including the Employer,

agree to subcontract Covered Work only to persons or entities who are signatory to a Construction Master Labor Agreement applicable to the work performed.  If an employer subcontracts Covered Work to a non-signatory entity, the employer becomes liable to the Trust Funds in an amount equal to the Monthly Contributions that would have been due if the entity had been signatory (plus interest, liquidated damages and audit fees thereon).

16.     Under the terms of the Agreements, employers, including the Employer, agree not to subcontract Covered Work to entities that are delinquent to the Trust Funds.  If an employer subcontracts Covered Work to such an entity the employer becomes under the terms of the Agreements liable to the Trust Funds for the Monthly Contributions due by the subcontractor and any lower-tier subcontractors.

17.     The Agreements provide the Trust Funds with specific authority to examine the payroll and business records of employers, including the Employer, to determine whether they have reported all hours worked by (or paid for) their employees who perform Covered Work, and whether they have paid the appropriate Monthly Contributions and other amounts due by them to the Trust Funds.  The Agreements further provide that employers, including the Employer, must maintain records sufficient for the Trust Funds to verify proper Monthly Reporting – and, where there has been inaccurate Monthly Reporting, to determine the additional amounts due – and that the employer must pay the Trust Funds' audit fees if it is delinquent to the Trust Funds.  The Trust Funds have delegated the authority to perform such audits to CLTF.

18.     The Agreements require employers to pay the Trust Funds' attorneys' fees and costs of litigation to enforce the Agreements' foregoing terms, including the Monthly Contribution, Monthly Reporting, subcontracting and audit provisions.

## LICENSE BOND

19.    CLTF is informed and believes, and on that basis alleges, that in order to adhere to California Business and Professions Code § 7071.6(a), the Employer obtained a license bond from the License Bond Surety in the penal sum required by law and filed it with the Registrar of the California State Contractors License Board. The bond referenced in this paragraph is referred to hereinafter as the "License Bond."

## PROJECTS

20.    CLTF is informed and believes, and on that basis alleges, that the General Contractor entered into two contracts with the County of Los Angeles ("County"), each for a public work of improvement for construction, alteration, demolition, installation or repair in Los Angeles County, California, paid in whole or in part out of public funds.  CLTF is informed and believes, and on that basis alleges, that one of the two public works is identifiable as HVAC JOC 9 ("JOC 9 Project"). CLTF is further informed and believes, and on that basis alleges, that the work at issue in this complaint on the JOC 9 Project was performed at the Culver City Courthouse under County work order P-12810-89131.  CLTF is informed and believes, and on that basis alleges, that the second of the two public works is identifiable as HVAC JOC 12 ("JOC 12 Project").  CLTF is further informed and believes and on that basis alleges, that the work at issue in this complaint on the JOC 12 Project was performed at the Central Juvenile Hall.  Where referenced collectively hereinafter, the JOC 9 Project and JOC 12 Project are referred to as the "County Projects").  CLTF is informed and believes, and on that basis alleges, that the County has an ownership interest in the real properties on which the County Projects were performed ("County Properties").

21.     CLTF is informed and believes, and on that basis alleges, that each of the County Projects is a "public works" as defined in California Labor Code ("Labor Code") § 1720, and that the contracts between the County and General Contractor to perform work on them are "public works contracts" as defined in Civil Code § 8038 and California Public Contract Code § 1101.  Pursuant to Labor Code § 1771, the "general prevailing rate of per diem wages" must be paid to all workers employed on the County Projects.

22.     CLTF is informed and believes, and on that basis alleges, that the General Contractor – in the capacity of a "direct contractor" (as defined in Civil Code § 8018) on the County Projects – subcontracted work to the Employer as a "subcontractor" (as defined in Civil Code § 8046) for the performance of Covered Work on the County Projects.

23.     CLTF is informed and believes, and on that basis alleges, that the Employer entered into a contract with the Centinela County Valley High School District ("District") for a public work of improvement for construction, alteration, demolition, installation or repair in Los Angeles County, California, paid in whole or in part out of public funds for work at the Leuzinger High School ("High School Project").  CLTF is informed and believes, and on that basis alleges, that the High School Project is identifiable as Leuzinger High School Phase III – Historic Main Building & Media Center Modernization.  CLTF is informed and believes, and on that basis alleges, that the District has an ownership interest in the real property on which the High School Project was performed ("District Property").

24.     CLTF is informed and believes, and on that basis alleges, that the High School Project is a "public works" as defined in California Labor Code ("Labor Code") § 1720, and that the contract between the District and Employer to perform

work on it is a "public works contract" as defined in Civil Code § 8038 and California Public Contract Code § 1101.  Pursuant to Labor Code § 1771, the "general prevailing rate of per diem wages" must be paid to all workers employed on the High School Project.

25.     CLTF is informed and believes, and on that basis alleges, that Employer performed Covered Work on the High School Project.

## FIRST CLAIM FOR RELIEF

### Against the Employer for Monetary Damages Due to Employee
### Benefit Plans Pursuant to Agreements

[29 U.S.C. §§ 185, 1132(g)(2) and 1145]

26.     CLTF repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 25 above as if fully set forth here.

27.     The Employer has failed to timely submit Monthly Contributions due by it to the Trust Funds.  Pursuant to the Agreements and ERISA sections 502(g)(2) and 515,  29 U.S.C. §§ 1132(g)(2) and 1145, the Employer owes the Trust Funds a known amount of $283,368.09 in, and as a result of, unpaid or late-paid Monthly Contributions and related damages (and/or late-submitted Monthly Reports) for months during August 2016 through March 2022 ("Known Delinquency").  The Known Delinquency consists of: $183,229.05 in unpaid Monthly Contributions; $13,487.59 in interest (through June 9, 2022); $83,314.48 in liquidated damages; $2,880.00 in audit fees; $35.00 in insufficient funds check fees; and $421.97 for the use of subcontractors not signatory to a collective bargaining agreement with the Laborers Union applicable to the work performed.

28.     The Trust funds and the Employer entered into an agreement tolling the applicable statute of limitations for the Trust Funds (including CLTF on their behalf) to file suit against the Employer to collect the portion of the Known Delinquency due for the months of August 2016 through June 2019 ("Then-Known Delinquency").  The tolling agreement became effective, and tolled the statute of limitations as of, August 22, 2019.  The remaining Then-Known Delinquency is $9,931.12, including interest through June 9, 2022, plus additional interest from June 9, 2022, as indicated in CLTF's second claim for relief in its present complaint, which is incorporated herein by reference.

29.     CLTF will establish by proof at the time of trial or through dispositive motion the Known Delinquency and any additional amounts determined to be due to the Trust Funds by the Employer, including any additional Monthly Contributions, interest, liquidated damages, audit fees, fees for the submission of checks not honored by the bank upon which they were drawn, attorneys' fees and costs, and amounts owed as a result of work performed by subcontractors of the Employer (or lower-tier subcontractors).  If deemed necessary by the Court, CLTF will amend its complaint to add any additional amounts determined to be due.  Any and all conditions to the Employer's obligations under the Agreements to pay the Known Delinquency and any additional amounts due under the Agreements to the Trust Funds have been met.

30.     Under the terms of the Agreements and ERISA section 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D), CLTF is entitled to an award of its attorneys' fees and costs.

///

///

///

## SECOND CLAIM FOR RELIEF

### Against the Employer and Principal for Monetary Damages For

### Breach of Settlement Agreement

[29 U.S.C. §§ 185, 1132(g)(2) and 1145]

31.     CLTF repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 30 above as if fully set forth here.

32.     The Trust Funds (through CLTF), Employer and Principal entered into a conditional settlement ("Settlement Agreement") with respect to the Employer's Then-Known Delinquency referenced in CLTF's first claim for relief in this complaint.  In and by the terms of the Settlement Agreement, the Trust Funds agreed to waive a portion of the Employer's Then-Known Delinquency upon, and conditioned upon, full performance of the terms of the Settlement Agreement by the Employer and Principal, including but not necessarily limited to payment of a portion of the Then-Known Delinquency in monthly installments ("Payment Plan") and strict compliance with the terms of the Monthly Reporting, Monthly Contribution and audit provisions of the Agreements during a "Compliance Period" extending through the term of the Payment Plan and the date of payment of any delinquent amounts determined to be due by a "Compliance Audit" following remittance of the Payment Plan installments.  Under the terms of the Settlement Agreement, the Principal became bound to it to the same extent as the Employer and became liable for the amounts due to the Trust Funds under its terms, including the amounts due upon breach.

33.     The Then-Known Delinquency covered delinquent amounts due for months during August 2016 through June 2019.  The Trust Funds, Employer and Principal entered into an agreement tolling the applicable statute of limitations for

the Trust Funds (including CLTF on their behalf) to file suit to collect the Then-Known Delinquency.  The tolling agreement became effective, and tolled the statute of limitations as of, August 22, 2019.

34.    Under the express terms of the Settlement Agreement, each of the following constitutes a failure of performance and a breach of the Settlement Agreement by the Employer and Principal: failure to timely remit Payment Plan installments in accordance with the terms of the Settlement Agreement; and failure to, during the Compliance Period, strictly comply with the Employer's obligations under the terms of the Agreements, including but not limited to (a) failure to timely submit Monthly Reports disclosing all of the work for which Monthly Contributions are due with payment of the Monthly Contributions due, (b) failure to comply with obligations regarding the use of subcontractors, (c) failure to comply with the obligation to maintain adequate documentation of work performed in order for the Trust Funds to determine through audit whether the Employer has complied with the Monthly Reporting and Contribution requirements of the Agreements, and (c) failure to, during the Compliance Period, comply with the obligation under the Agreements to provide the Trust Funds with full access to the Employer's books and records to complete an audit, including but not limited to the Compliance Audit.

35.    The Employer and Principal breached the Settlement Agreement in at least the following ways: (a) failing to timely remit Payment Plan installments; (b) failing during the Compliance Period to timely submit Monthly Reports disclosing all of the work for which Monthly Contributions are due with payment of the Monthly Contributions due; and (c) failing to provide the Trust Funds with full access to its books and records to complete the Compliance Audit.

36.    As a result of the breach by the Employer and Principal of the Settlement

Agreement: (a) the conditions in the Settlement Agreement for waiver of a portion of the Then-Known Delinquency were not met and the Settlement Agreement does not bar collection of any unsatisfied amounts of that delinquency by any lawful means, including through enforcement of the Settlement Agreement and the Agreements; and (b) under the terms of the Settlement Agreement, the full amount of the Then-Known Delinquency became immediately, and is presently, due and owing jointly and severally by the Employer and Principal to the Trust Funds, minus any Payment Plan installments made plus interest at the Trust Funds' plan rate.  The amount due jointly and severally by the Employer and Principal for their breach of the Settlement Agreement is $9,931.12 as of June 9, 2022 plus additional interest from June 9, 2022.  Any and all conditions to the obligation of the Employer and Principal under the Settlement Agreement to pay this amount have been met.

37.     Under the terms of the Settlement Agreement and 29 U.S.C. § 1132(g)(2)(D), CLTF is entitled to an award of its attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

**Against the License Bond Surety for Monetary Damages**
**Through Enforcement of License Bond**

[28 U.S.C. § 1367(a); Cal. Bus & Prof. Code § 7071.11(d)]

38.     CLTF repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 37 above as if fully set forth here.

39.     The Trust Funds are "Laborers" under California Civil Code ("Civil Code") § 8024(b).  As such, they are beneficiaries of the License Bond under California Business and Professions Code ("Business and Professions Code") § 7071.5(e).

40.     CLTF submitted a claim against the License Bond for Monthly Contributions due by the Employer to the Trust Funds ("License Bond Claim"). Pursuant to Business and Professions Code §§ 7071.5(e) and 7071.11(a), and, upon information and belief, the terms of the License Bond, the License Bond Surety is required to pay the Trust Funds up to the penal sum of the License Bond for the failure of its principal, the Employer, to remit Monthly Contributions to the Trust Funds.

41.     The License Bond Surety has not paid the License Bond Claim as required by the above-referenced statutes, and, upon information and belief, the terms of the License Bond.

42.     CLTF brings this claim for relief on behalf of the Trust Funds under Business and Professions Code § 7071.11(d) to enforce the terms of the License Bond to recover a portion of the amount due by the Employer to the Trust Funds (up to the penal sum of the License Bond).

**<u>FOURTH CLAIM FOR RELIEF</u>**

**Against Old Republic Payment Bond Surety and the General Contractor for Monetary Damages Through Enforcement of JOC 9 Project Payment Bond**

[Cal. Civ. Code §§ 8024(b) and (c), 9100(a)(1) and (2), 9554(b)(1) and (c)]

43.     CLTF repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 42 above as if fully set forth here.

44.     CLTF is informed and believes, and on that basis alleges, that Old Republic Payment Bond Surety issued a payment bond naming the General Contractor as principal, covering work performed on the JOC 9 Project, including

Monthly Contributions due by the Employer to the Trust Funds for work on the JOC 9 Project ("JOC 9 Payment Bond").

45.     CLTF is informed and believes, and on that basis alleges, that under the terms of the JOC 9 Payment Bond Old Republic Payment Bond Surety is a guarantor of the compensation that must be remitted to the Trust Funds for Covered Work on the JOC 9 Project, including the amount due by the Employer to the Trust Funds in Monthly Contributions and interest thereon.  The employees of the Employer who performed Covered Work on the JOC 9 Project are among the persons authorized to file a payment bond claim pursuant to Civil Code §§ 9100(a)(1) and (2), and 9554(b)(1) and (c).  The Trust Funds are the assignees of the portion of those employees' compensation payable as Monthly Contributions.  The Trust Funds have standing to file and enforce a payment bond claim for such compensation pursuant to Civil Code §§ 8024(b) and (c), 9100(a)(2) and 9554(c).  Pursuant to Civil Code §§ 9300(b)(1) and 9560(e), the Trust Funds – as "Laborers" within the meaning of Civil Code § 8024(b) and (c) – are exempt from the preliminary notice requirements of Civil Code §§ 9300(a) and 9560(a) through (c).

46.     Under Civil Code § 8154(a) and (c), the JOC 9 Payment Bond "shall be construed most strongly against Old Republic Payment Bond Surety and in favor of all persons for whose benefit the bond is given" and "the sole conditions of recovery on the bond are that the claimant is a person described in [Civil Code section 8400 et seq.] or in [Civil Code] Section 9100, and has not been paid the full amount of the claim."

47.     On or about May 24, 2022, CLTF submitted a claim on the JOC 9 Payment Bond for known amounts due by the Employer to the Trust Funds in Monthly Contributions for work by the Employer's employees on the JOC 9 Project,

plus interest ("JOC 9 Payment Bond Claim").  The JOC 9 Payment Bond Claim totaled $75,898.39, consisting of $71,721.37 in unpaid Monthly Contributions and $4,177.02 in interest through May 31, 2022.  Additional interest is due, and continues to accrue, at the rates required by the Agreements, the JOC 9 Payment Bond and other law, including but not limited to Labor Code § 218.6 and Civil Code § 3287.

48.     Old Republic Payment Bond Surety has not honored its obligation under the JOC 9 Payment Bond to pay the JOC 9 Payment Bond Claim.  CLTF brings this claim for relief on behalf of the Trust Funds to recover the JOC 9 Payment Bond Claim through the enforcement of the terms of the JOC 9 Payment Bond.  As the principal on the JOC 9 Payment Bond, the General Contractor is also liable for the amounts due under the terms of the JOC 9 Payment Bond.

49.     CLTF is informed and believes, and on that basis alleges, that Old Republic Payment Bond Surety's failure to pay the JOC 9 Payment Bond Claim is willful.  As a result, Old Republic Payment Bond Surety is required under Labor Code § 203.5 to pay a penalty in an amount equal to 30 days extra compensation for each Laborer Employee with respect to whom the Employer failed to remit Monthly Contributions to the Trust Funds for work performed on the JOC 9 Project.

50.     CLTF seeks enforcement of the JOC 9 Payment Bond to recover the amounts due to the Trust Funds for the Covered Work performed by the Employer's employees on the JOC 9 Project, including: the amount of the JOC 9 Payment Bond Claim as submitted; additional unpaid Monthly Contributions according to proof; additional interest at the rates required by the Agreements, the JOC 9 Payment Bond and other law, including but not limited to Labor Code § 218.6 and Civil Code § 3287; costs required by the Agreements, the JOC 9 Payment Bond and other law,

including but not limited to Labor Code § 218.5; attorneys' fees to the extent provided by the Agreements, the JOC 9 Payment Bond and other law, including but not limited to California Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and 8154; and an amount equal to 30 days extra compensation for each employee with respect to whom the Employer failed to remit Monthly Contributions to the Trust Funds for work performed on the JOC 9 Project, as a penalty under California Labor Code § 203.5.

## FIFTH CLAIM FOR RELIEF

**Against Old Republic Payment Bond Surety and the General Contractor for Monetary Damages Through Enforcement of JOC 12 Project Payment Bond**

[Cal. Civ. Code §§ 8024(b) and (c), 9100(a)(1) and (2), 9554(b)(1) and (c)]

51.     CLTF repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 50 above as if fully set forth here.

52.     CLTF is informed and believes, and on that basis alleges, that Old Republic Payment Bond Surety issued a payment bond naming the General Contractor as principal, covering work performed on the JOC 12 Project, including Monthly Contributions due by the Employer to the Trust Funds for work on the JOC 12 Project ("JOC 12 Payment Bond").

53.     CLTF is informed and believes, and on that basis alleges, that under the terms of the JOC 12 Payment Bond Old Republic Payment Bond Surety is a guarantor of the compensation that must be remitted to the Trust Funds for Covered Work on the JOC 12 Project, including the amount due by the Employer to the Trust Funds in Monthly Contributions and interest thereon.  The employees of the Employer who performed Covered Work on the JOC 12 Project are among the

persons authorized to file a payment bond claim pursuant to Civil Code §§ 9100(a)(1) and (2), and 9554(b)(1) and (c).  The Trust Funds are the assignees of the portion of those employees' compensation payable as Monthly Contributions.  The Trust Funds have standing to file and enforce a payment bond claim for such compensation pursuant to Civil Code §§ 8024(b) and (c), 9100(a)(2) and 9554(c).  Pursuant to Civil Code §§ 9300(b)(1) and 9560(e), the Trust Funds – as "Laborers" within the meaning of Civil Code § 8024(b) and (c) – are exempt from the preliminary notice requirements of Civil Code §§ 9300(a) and 9560(a) through (c).

54.     Under Civil Code § 8154(a) and (c), the JOC 12 Payment Bond "shall be construed most strongly against Old Republic Payment Bond Surety and in favor of all persons for whose benefit the bond is given" and "the sole conditions of recovery on the bond are that the claimant is a person described in [Civil Code section 8400 et seq.] or in [Civil Code] Section 9100, and has not been paid the full amount of the claim."

55.     On or about May 17, 2022, CLTF submitted a claim on the JOC 12 Payment Bond for known amounts due by the Employer to the Trust Funds in Monthly Contributions for work by the Employer's employees on the JOC 12 Project, plus interest ("JOC 12 Payment Bond Claim").  The JOC 12 Payment Bond Claim totaled $5,336.78, consisting of $5,097.85 in unpaid Monthly Contributions and $238.93 in interest through June 1, 2022.  Additional interest is due, and continues to accrue, at the rates required by the Agreements, the JOC 12 Payment Bond and other law, including but not limited to Labor Code § 218.6 and Civil Code § 3287.

56.     Old Republic Payment Bond Surety has not honored its obligation under the JOC 12 Payment Bond to pay the JOC 12 Payment Bond Claim.  CLTF brings

this claim for relief on behalf of the Trust Funds to recover the JOC 12 Payment Bond Claim through the enforcement of the terms of the JOC 12 Payment Bond.  As the principal on the JOC 12 Payment Bond, the General Contractor is also liable for the amounts due under the terms of the JOC 12 Payment Bond.

57.     CLTF is informed and believes, and on that basis alleges, that Old Republic Payment Bond Surety's failure to pay the JOC 12 Payment Bond Claim is willful.  As a result, Old Republic Payment Bond Surety is required under Labor Code § 203.5 to pay a penalty in an amount equal to 30 days extra compensation for each Laborer Employee with respect to whom the Employer failed to remit Monthly Contributions to the Trust Funds for work performed on the JOC 12 Project.

58.     CLTF seeks enforcement of the JOC 12 Payment Bond to recover the amounts due to the Trust Funds for the Covered Work performed by the Employer's employees on the JOC 12 Project, including: the amount of the JOC 12 Payment Bond Claim as submitted; additional unpaid Monthly Contributions according to proof; additional interest at the rates required by the Agreements, the JOC 12 Payment Bond and other law, including but not limited to Labor Code § 218.6 and Civil Code § 3287; costs required by the Agreements, the JOC 12 Payment Bond and other law, including but not limited to Labor Code § 218.5; attorneys' fees to the extent provided by the Agreements, the JOC 12 Payment Bond and other law, including but not limited to California Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and 8154; and an amount equal to 30 days extra compensation for each employee with respect to whom the Employer failed to remit Monthly Contributions to the Trust Funds for work performed on the JOC 12 Project, as a penalty under California Labor Code § 203.5.

///

///

## SIXTH CLAIM FOR RELIEF

**Against American Contractors Payment Bond Surety and the Employer for**

**Monetary Damages Through Enforcement of High School Payment Bond**

[Cal. Civ. Code §§ 8024(b) and (c), 9100(a)(1) and (2), 9554(b)(1) and (c)]

59.    CLTF repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 58 above as if fully set forth here .

60.    CLTF is informed and believes, and on that basis alleges, that American Contractors Payment Bond Surety issued a payment bond naming the Employer as principal, covering work performed on the High School Project, including Monthly Contributions due by the Employer to the Trust Funds for work on the High School Project ("High School Payment Bond").

61.    CLTF is informed and believes, and on that basis alleges, that under the terms of the High School Payment Bond American Contractors Payment Bond Surety is a guarantor of the compensation that must be remitted to the Trust Funds for Covered Work on the High School Project, including the amount due by the Employer to the Trust Funds in Monthly Contributions and interest thereon.  The employees of the Employer who performed Covered Work on the High School Project are among the persons authorized to file a payment bond claim pursuant to Civil Code §§ 9100(a)(1) and (2), and 9554(b)(1) and (c).  The Trust Funds are the assignees of the portion of those employees' compensation payable as Monthly Contributions.  The Trust Funds have standing to file and enforce a payment bond claim for such compensation pursuant to Civil Code §§ 8024(b) and (c), 9100(a)(2) and 9554(c).  Pursuant to Civil Code §§ 9300(b)(1) and 9560(e), the Trust Funds – as "Laborers" within the meaning of Civil Code § 8024(b) and (c) – are exempt from the preliminary notice requirements of Civil Code §§ 9300(a) and 9560(a)

through (c).

62.     Under Civil Code § 8154(a) and (c), the High School Payment Bond "shall be construed most strongly against American Contractors Payment Bond Surety and in favor of all persons for whose benefit the bond is given" and "the sole conditions of recovery on the bond are that the claimant is a person described in [Civil Code section 8400 et seq.] or in [Civil Code] Section 9100, and has not been paid the full amount of the claim."

63.     On or about June 3, 2022, CLTF submitted a claim on the High School Payment Bond for known amounts due by the Employer to the Trust Funds in Monthly Contributions for work by the Employer's employees on the High School Project, plus interest ("High School Payment Bond Claim").  The High School Payment Bond Claim totaled $3,406.49, consisting of $3,193.83 in unpaid Monthly Contributions and $212.66 in interest through June 3, 2022.  Additional interest is due, and continues to accrue, at the rates required by the Agreements, the High School Payment Bond and other law, including but not limited to Labor Code § 218.6 and Civil Code § 3287.

64.     American Contractors Payment Bond Surety has not honored its obligation under the High School Payment Bond to pay the High School Payment Bond Claim.  CLTF brings this claim for relief on behalf of the Trust Funds to recover the High School Payment Bond Claim through the enforcement of the terms of the High School Payment Bond.  As the principal on the High School Payment Bond, the Employer is also liable for the amounts due under the terms of the High School Payment Bond.

65.     CLTF is informed and believes, and on that basis alleges, that American

Contractors Payment Bond Surety's failure to pay the High School Payment Bond Claim is willful.  As a result, American Contractors Payment Bond Surety is required under Labor Code § 203.5 to pay a penalty in an amount equal to 30 days extra compensation for each Laborer Employee with respect to whom the Employer failed to remit Monthly Contributions to the Trust Funds for work performed on the High School Project.

66.     CLTF seeks enforcement of the High School Payment Bond to recover the amounts due to the Trust Funds for the Covered Work performed by the Employer's employees on the High School Project, including: the amount of the High School Payment Bond Claim as submitted; additional unpaid Monthly Contributions according to proof; additional interest at the rates required by the Agreements, the High School Payment Bond and other law, including but not limited to Labor Code § 218.6 and Civil Code § 3287; costs required by the Agreements, the High School Payment Bond and other law, including but not limited to Labor Code § 218.5; attorneys' fees to the extent provided by the Agreements, the High School Payment Bond and other law, including but not limited to California Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and 8154; and an amount equal to 30 days extra compensation for each employee with respect to whom the Employer failed to remit Monthly Contributions to the Trust Funds for work performed on the High School Project, as a penalty under California Labor Code § 203.5.

## **SEVENTH CLAIM FOR RELIEF**

**Against the Employer for Specific Performance of Obligation**

**to Produce Records for Audit**

[29 U.S.C. §§ 1132(a)(3) and 1132(g)(2)(E)]

67.     CLTF repeats, realleges and incorporates by reference each and every

allegation contained in paragraphs 1 through 66 above as if fully set forth here.

68.     CLTF requests that the Court exercise its authority under ERISA sections 502(a)(3) and (g)(2)(E), 29 U.S.C. §§ 1132(a)(3) and (g)(2)(E) to order the Employer to comply with its obligation under the Agreements and ERISA to fully produce its books and records in order for CLTF to complete an audit to determine if additional amounts are due.

69.     An award of attorneys' fees and costs is provided for by Agreements and under ERISA sections 502(g)(1) and/or (g)(2), 29 U.S.C. § 1132(g)(1) and/or (g)(2).

**WHEREFORE, CLTF prays for judgment as follows:**

<u>ON CLTF'S FIRST CLAIM FOR RELIEF</u>

[Against the Employer for Monetary Damages Due to Employee Benefit Plans]

A.     For $183,229.05 in unpaid Monthly Contributions, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(A).

B.     For $13,487.59  in interest through June 9, 2022 on unpaid or late paid Monthly Contributions at the rate of five percent above the variable prime rate set by the Federal Reserve Board of San Francisco, California, plus such additional interest that has or does hereafter accrue from June 9, 2022, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(B).

C.     For $83,314.48 in liquidated damages for unpaid and late-paid Monthly Contributions at, for each of the Trust Funds separately, the greater of 20% or $25, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(C).

D.    For $2,880.00 in audit fees, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(E).

E.    For $35.00 in insufficient funds check fees, as required by the Agreements and provided under 29 U.S.C. § 1132(g)(2)(E).

F.    For $421.97 for the use of subcontractors not signatory to a collective bargaining agreement with the Laborers Union, as required by the Agreements.

G.    For, according to proof, any additional Monthly Contributions, interest, liquidated damages, audit fees, insufficient funds check fees, and amounts owed as a result work performed by any subcontractors of the Employer (or lower-tier subcontractors) determined to be due, pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2) and 1145.

H.    For reasonable attorneys' fees and costs of suit, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(D).

I.    For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

## ON CLTF'S SECOND CLAIM FOR RELIEF

[Against the Employer and Principal for Monetary Damages for
Breach of Settlement Agreement]

A.    For $9,931.12, pursuant to the Settlement Agreement and applicable law, including but not limited to 29 U.S.C. §§ 185, 1132(g)(2) and 1145, and California

Civil Code § 3302, and any other damages arising from the breach of the Settlement Agreement by the Employer and Principal.

B.      For interest at the Trust Funds' plan rate(s) per annum from June 9, 2022, pursuant to terms of the Settlement Agreement and applicable law, including but not limited to 29 U.S.C. § 1132(g)(2)(B) and 1145 California Civil Code §§ 3287, 3289 and 3302.

C.      For attorneys' fees and costs of collection, pursuant to the Settlement Agreement and applicable law, including but not limited to 29 U.S.C. § 1132(g)(2)(D), California Civil Procedure Code § 1032(b), and California Civil Code § 1717.

D.      For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including, but not limited to, the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

<u>ON CLTF'S THIRD CLAIM FOR RELIEF</u>

[Against the License Bond Surety for Monetary Damages
Through Enforcement of License Bond]

A.      For enforcement of the License Bond pursuant to California Business and Professions Code §§ 7071.5(e) and 7071.11(a).

B.      For the penal sum of the License Bond, plus interest at the rate or rates required by law, including California Labor Code § 218.6, from the respective days the Monthly Contributions providing the basis for the License Bond Claim became due.

C.      For reasonable attorneys' fees and costs.

D.      For such other relief that this Court deems appropriate.

### ON CLTF'S FOURTH CLAIM FOR RELIEF

[Against Old Republic Payment Bond Surety and the General Contractor

for Monetary Damages Through Enforcement of the JOC 9 Payment Bond]

A.      For $71,721.37 in unpaid Monthly Contributions due to the Trust Funds guaranteed by the JOC 9 Payment Bond for Covered Work performed by the Employer's employees on the JOC 9 Project.

B.      For $4,177.02 in interest on the unpaid Monthly Contributions through May 31, 2022.

C.      For additional interest at the rates from May 31, 2022 required by the Agreements, the JOC 9 Payment Bond and other law, including but not limited to California Labor Code § 218.6 and California Civil Code § 3287.

D.      For, according to proof, additional amounts in Monthly Contributions and interest owed to the Trust Funds by the Employer for Covered Work on the JOC 9 Project.

E.      For costs required by the Agreements, the JOC 9 Payment Bond and other law, including but not limited to California Labor Code § 218.5 and California Civil Code § 9364(a).

F.      For reasonable attorneys' fees to the extent recoverable pursuant to the

Agreements, the JOC 9 Payment Bond and other law, including California Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and 8154.

G.      For an amount equal to 30 days extra compensation for each employee with respect to whom the Employer failed to submit Monthly Contributions to the Trust Funds for Covered Work performed on the JOC 9 Project, as a penalty under California Labor Code § 203.5.

H.      For such other relief that this Court deems appropriate.

### ON CLTF'S FIFTH CLAIM FOR RELIEF

[Against Old Republic Payment Bond Surety and the General Contractor for Monetary Damages Through Enforcement of the JOC 12 Payment Bond]

A.      For $5,097.85 in unpaid Monthly Contributions due to the Trust Funds guaranteed by the JOC 12 Payment Bond for Covered Work performed by the Employer's employees on the JOC 12 Project.

B.      For $238.93 in interest on the unpaid Monthly Contributions through June 1, 2022.

C.      For additional interest at the rates from June 1, 2022 required by the Agreements, the JOC 12 Payment Bond and other law, including but not limited to California Labor Code § 218.6 and California Civil Code § 3287.

D.      For, according to proof, additional amounts in Monthly Contributions and interest owed to the Trust Funds by the Employer for Covered Work on the JOC 12 Project.

E.      For costs required by the Agreements, the JOC 12 Payment Bond and other law, including but not limited to California Labor Code § 218.5 and California Civil Code § 9364(a).

F.      For reasonable attorneys' fees to the extent recoverable pursuant to the Agreements, the JOC 12 Payment Bond and other law, including California Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and 8154.

G.      For an amount equal to 30 days extra compensation for each employee with respect to whom the Employer failed to submit Monthly Contributions to the Trust Funds for Covered Work performed on the JOC 12 Project, as a penalty under California Labor Code § 203.5.

H.      For such other relief that this Court deems appropriate.

### ON CLTF'S SIXTH CLAIM FOR RELIEF

[Against American Contractors Payment Bond Surety and the Employer for Monetary Damages Through Enforcement of the High School Payment Bond]

A.      For $3,193.83 in unpaid Monthly Contributions and due to the Trust Funds guaranteed by the High School Payment Bond for Covered Work performed by the Employer's employees on the High School Project.

B.      For $212.66 in interest on the unpaid Monthly Contributions through June 3, 2022.

C.      For additional interest at the rates from June 3, 2022 required by the Agreements, the High School Payment Bond and other law, including but not limited

to California Labor Code § 218.6 and California Civil Code § 3287.

D.     For, according to proof, additional amounts in Monthly Contributions and interest owed to the Trust Funds by the Employer for Covered Work on the High School Project.

E.     For costs required by the Agreements, the High School Payment Bond and other law, including but not limited to California Labor Code § 218.5 and California Civil Code § 9364(a).

F.     For reasonable attorneys' fees to the extent recoverable pursuant to the Agreements, the High School Payment Bond and other law, including California Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and 8154.

G.     For an amount equal to 30 days extra compensation for each employee with respect to whom the Employer failed to submit Monthly Contributions to the Trust Funds for Covered Work performed on the High School Project, as a penalty under California Labor Code § 203.5.

H.     For such other relief that this Court deems appropriate.

## ON CLTF'S SEVENTH CLAIM FOR RELIEF

[Against the Employer for Specific Performance of
Obligation to Produce Records for Audit]

A.     For the issuance of injunctive relief pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the Employer and its managing officers, managing employees, agents and successors, as well as all those

in active concert or participation with any one or more of them, to submit to an audit of the Employer's records from at least January 1, 2019, to fully cooperate with CLTF with respect to the audit in order for CLTF to determine the total amount due to the Trust Funds by the Employer, and, specifically, to produce to CLTF the following payroll and business records – and any other records determined by CLTF to be necessary to conduct a full audit – for inspection, examination and copying:

A.1.   All of the Employer's payroll and employee records, as well as any other records that might be relevant to a determination of the work performed by the Employer, its employees, its subcontractors, its lower-tier subcontractors and the employees of the Employer's subcontractors and lower-tier subcontractors, including but not limited to payroll journals, employee earnings records, certified payroll records, payroll check books and stubs, cancelled payroll checks, payroll time cards and state and federal tax returns (and all other state and federal tax records), as well as labor distribution journals and any other records that might be relevant to an identification of the employees who performed work for the Employer, its subcontractors or lower-tier subcontractors, or which might be relevant to a determination of the projects on which the Employer, its employees, its subcontractors, lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work, including any records that provide the names, addresses, Social Security numbers, job classification or the number of hours worked by any one or more employee;

A.2.   All of the Employer's job files for each contract, project or job on which the Employer, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors worked, including but not limited to all correspondence, agreements and contracts between the Employer and any general contractor, subcontractor, owner, builder or

developer, as well as all field records, job records, notices, project logs, supervisors' diaries and notes, employees' diaries and notes, memoranda, releases and any other records that relate to the supervision of the Employer's employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors and lower-tier subcontractors, or the projects on which the Employer, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

A.3.   All of the Employer's records related to cash receipts, including but not limited to the Employer's cash receipts journals, accounts receivable journals, accounts receivable subsidiary ledgers and billing invoices for all contracts, projects and jobs on which the Employer, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

A.4.   All of the Employer's bank statements, including but not limited to those for all checking, savings and investment accounts;

A.5.   All of the Employer's records related to disbursements, including but not limited to vendors' invoices, cash disbursement journals, accounts payable journals, check registers and all other records which indicate disbursements;

A.6.   All collective bargaining agreements between the Employer and any trade union, and all records of contributions by the Employer to any trade union trust fund; and

A.7.   All records related to the formation, licensing, renewal or operation of the Employer.

B.     For reasonable attorneys' fees and costs of suit, as required by the Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

C.     For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

DATED: June 10, 2022                    REICH, ADELL & CVITAN
                                        A Professional Law Corporation


                                        By:_____/s/ Peter A. Hutchinson_____
                                              PETER A. HUTCHINSON
                                              Attorneys for Plaintiff